**FILED**

NOV 8 - 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

MARCUS SEWELL,

        Defendant.

_____/

No. CR 06-0554 MJJ

**DETENTION ORDER**

    Having considered all the matters of record in this case, including (among other things) the Pretrial Services Report, proffers made during the detention hearing on September 28, 2006, and papers submitted thereafter by counsel for Mr. Sewell and by the government, the court finds that the government has established, by a preponderance of the evidence, that none of the conditions the court could impose on the pretrial release of Mr. Sewell would provide reasonable assurance that he would make his court appearances. It follows that the court must ORDER MR. SEWELL DETAINED.

    The indictment in this case charges Mr. Sewell with sex trafficking in minors and transporting minors across state lines for the purpose of having them engage in illegal sexual activities. His prison-time exposure in this case could range up to the remainder of his life.

cc: WOB's Stats, Copy to parties via ECF, Monica Tutson, 2 certified copies to Marshal, Pretrial

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

According to the government, Mr. Sewell operated an extensive, interstate prostitution ring in which at least two of the prostitutes he managed were under 18 years of age. The government alleges that Mr. Sewell placed advertisements for prostitution services in magazines, inviting customers to use prostitutes he controlled in San Francisco, Los Angeles, San Diego, Chicago, Miami, or New York. He also is alleged to have engaged in pimping in Arizona and North Carolina. The government further contends that one of the girls whose sexual services Mr. Sewell managed was only 14 when Mr. Sewell first "hooked up" with her. She apparently turned 15 sometime in mid-2005, just after Mr. Sewell allegedly started selling her sexual services over the internet. The government contends that Mr. Sewell knew that both this minor, D.B., and one of his other prostitutes, N.K., were underage. Mr. Sewell denies that he knew that either of these girls was under 18 at the time of the alleged offense conduct.

Mr. Sewell did not deny (in the detention hearing) that he was arrested in Las Vegas on the pending charges – and that at the time he attempted to flee, then struggled with the arresting officers. Nor did he deny that by being in Las Vegas (without permission from his state probation officer) he was violating the terms and conditions of his active probation. He concedes that he was on probation following a misdemeanor conviction in the spring of 2003 in San Mateo County for threatening a crime with intent to terrorize. Nor did he deny that he had violated the terms of that probation on three other occasions (October 2003, December 2003, and August of 2004). As the court understood Mr. Sewell's statements during the detention hearing, the last of these violations resulted from his threatening (apparently over

United States District Court

For the Northern District of California

the phone from Las Vegas – where he was not supposed to be) to kill the mother of three of his children and to harm those children in some unspecified way.

The government contends that one of the underage prostitutes that Mr. Sewell was using in his operation felt threatened (with physical harm) and pressured by Mr. Sewell. Mr. Sewell denies this allegation, pointing out that this girl has an extensive criminal record and arguing that she has no credibility.

Mr. Sewell did not deny that there are three outstanding warrants for his arrest. One stems from charges in Santa Clara County that he engaged there in illegal commercial trafficking in sex – trafficking that allegedly involved, perhaps among other prostitutes, the girl whom the government contends turned 15 in the summer of 2005. The second warrant is based on yet another alleged violation of probation for yet again making threats with intent to terrorize. The third warrant is based on allegations that Mr. Sewell is delinquent in paying some $552 in traffic fines in Santa Clara County.

Mr. Sewell admits that he has used marijuana daily for about 20 years. Four of his past arrests were based, at least in part, on alleged violations of drug laws.

The government reported during the detention hearing that when officers conducted a search of an apartment Mr. Sewell has periodically used in Oakland they found a stolen firearm and pornographic photographs of minors – D.B. and N.K. Mr. Sewell claims that a friend of his leases this apartment but permits Mr. Sewell to use it for a week or two at a time each month. Mr. Sewell admitted taking girls to this apartment and 'fooling around.' He denied any responsibility for the stolen gun – but did not deny responsibility for the child

3

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

pornography.  When he was interviewed by Pretrial Services he said nothing about this residence, even though it appears that he has been spending as much time there as in any of the several other places he says he has been staying.

The government asserted (without contradiction from the defense) that Mr. Sewell had acquired false identification documents for two minors who were in his prostitution stable so that when they traveled interstate (on commercial aircraft – using tickets Mr. Sewell purchased) to engage in prostitution under his management they would not be viewed as unaccompanied minors.

The government also contends that Mr. Sewell has access to resources he could use to flee – even though he has been unemployed since 2001.  According to the government, each of Mr. Sewell's prostitutes (of whom there were at least several) were wiring him about $1,000 per day, five days a week.  Mr. Sewell owns a $50,000 Lexus and in 2003 netted about $200,000 from selling a house he owned in Las Vegas.  He says he has spent that money.  The charges pending in Santa Clara County and in this court, however, suggest that he has had a steady and substantial source of illegal income for quite some time.  It is not clear where that money has gone.

Mr. Sewell admits to having fathered four children – and that the mother of another child claims that he is that child's father, as well.  He concedes that he pays child support, occasionally, for only one of these children.

The picture of Mr. Sewell that emerges from the information before the court is of a person who has no respect for rules (e.g., terms of probation) or laws (e.g., about making

4

money illegally), and no concern about how his activities can harm other people.  He has used marijuana illegally for two decades.  He has repeatedly violated the terms and conditions of his probation – by threatening people, by engaging in extensive unauthorized travel, and by using marijuana on a daily basis.   He has intense emotional outbursts, sometimes threatening women with violence when they resist his pressures.  He has traveled extensively but without permission – and rarely seems to stay in the same place for more than a couple of weeks at a time.  He has had income he has not reported – and has moved his assets around in unusual and curious ways (e.g., he moved money from a safe deposit box into a bank account in separate $50,000 chunks).  He has demonstrated an impulse to flee when confronted by the authorities (trying to escape arrest, and struggling with the officers who were trying to take him into custody in the Las Vegas Hotel).

Against this backdrop, the proffer of sureties in support of his request for pretrial release falls well short of what the Bail Reform Act requires.   A half sister, an aunt, and a friend are willing to sign an unsecured bond on his behalf.  But no one is prepared to post property to support his release (none of the proposed sureties owns property that could be posted).  Given these circumstances, Mr. Sewell might well be tempted to conclude that if he fled, none of the sureties would be likely to suffer any significant financial harm.

Moreover, it is not clear to the court that Mr. Sewell would be substantially constrained even if he thought the sureties would suffer if he fled.  His ties to other people seem to be extremely thin.  He has demonstrated a considerable ability to look out for himself and to pursue what he wants, but there is no evidence that he feels real responsibility for

others.  He does not support several children he admits he has fathered.  He plays little or no role in their lives.  He has not sustained respectful relationships with their mothers.  His proposed sureties do not appear to be major players in his day to day life.  In sum, the court has no confidence that Mr. Sewell feels the kind of connection with other people that would be needed to provide reasonable assurance that he would not flee or hide if he were released.

For the reasons set forth above, the court ORDERS MR. SEWELL DETAINED.

**IT IS SO ORDERED.**

Dated: November 8, 2006.

Wayne D. Brazil
UNITED STATES MAGISTRATE
JUDGE